IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 09-_____ |
| v. | : | DATE FILED:_____ |
| STEFAN R. SEUSS<br>THOMAS R. MEYER | :<br>: | VIOLATIONS: 18 U.S.C. § 1956 (h)<br>(Money laundering conspiracy - 1 count) |

### INDICTMENT

### COUNT ONE

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

**The Defendants and Their Financial Consulting Businesses**

At all times material to this indictment:

1.      Defendant STEFAN R. SEUSS, a German national, who resided in the State of Florida, was an international money and asset wealth consultant, specializing in setting up off shore companies and foreign bank accounts to shield investments and monetary funds for clients around the world, including the United States.  Defendant SEUSS provided consulting services through one of his businesses called Seuss and Partners, L.L.C., that was incorporated in the State of Florida in or about February 2005 and operated from locations in Miami, Florida, as well as Frankfurt, Germany, Sao Paulo, Brazil, Zurich, Switzerland and Salzburg, Austria.  SEUSS was also associated with various financial institutions in Switzerland, including the Wegelin Bank.

2.      Defendant THOMAS R. MEYER, a United States citizen and a German national, resided in Omaha, Nebraska, and was a financial advisor, specializing in life insurance

investments. Defendant MEYER was associated with, and served as a consultant for, a company called Global Life Solutions, L.L.C., d/b/a, "Atlast Life Solutions," (Global) located in Ponte Vedra Beach, Florida. Global purchased existent life insurance policies from various individuals and groups and offered these policies as insurance investment opportunities to investors and financial institutions.

3. Defendants STEFAN R. SEUSS and THOMAS R. MEYER, through their respective consulting businesses, associated with each other and often collaborated to provide clients a variety of financial services and investment opportunities that included, among other things, transferring monetary funds from the United States into foreign bank accounts set up by defendant SEUSS and off shore companies located in the British Virgin Islands and elsewhere. The funds were invested in insurance settlement annuities offered by defendant MEYER.

### The "Client"

4. A federal agent, working undercover (UCA) at the direction of an authorized federal law enforcement agent, posed as a businessman who owned a wholesale, cash-based commercial operation that illegally duplicated, distributed and sold CDs, DVDs and computer software to other businesses and individuals in New York and other parts of the United States, in violation of United States' copyright infringement laws under Title 18, United States Code, Section 2319.

5. On or about July 10, 2007, at a meeting held at the Renaissance Hotel in Philadelphia, Pennsylvania, the UCA posed as a potential client who required the services of defendants STEFAN R. SEUSS and THOMAS R. MEYER to transfer substantial sums of cash from the United States to a location outside the United States, which proceeds were generated

from the UCA's illegal duplicating business and which the UCA wanted to conceal from United States authorities. Defendants SEUSS and MEYER provided the UCA with solutions to transfer the UCA's alleged illegal cash proceeds outside the United States through offshore structures, foreign bank accounts and investment vehicles that defendants SEUSS and MEYER would arrange for a fee.

## THE CONSPIRACY

6.  From in or about July 2007 to in or about late June 2008, in the Eastern District of Pennsylvania and elsewhere, defendants

**STEFAN R. SEUSS and
THOMAS R. MEYER**

conspired and agreed with each other and with other persons, known and unknown to the grand jury, to knowingly transport, transmit and transfer the sum of approximately $500,000 in cash from a place in the United States to, and through, a place outside the United States, which funds were represented by an undercover federal law enforcement agent to be cash proceeds of specified unlawful activity, that is, an offense involving the illegal duplication, distribution and sale of copyrighted CDs, DVDs and computer software products, in violation of Title 18 United States Code, Section 2319 and Title 17, United States Code, Section 506(a)(1)(A), and knowing that the transportation, transmission and transfer of the cash was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the funds believed to be proceeds of the specified unlawful activity in violation of Title 18, United States Code, Section 1956 (a)(2)(B)(i).

**MANNER AND MEANS**

It was part of the conspiracy that:

7.  On or about July 10, 2007, at a meeting held in Philadelphia, Pennsylvania, at the Renaissance Hotel, with the UCA and defendant THOMAS R. MEYER, (hereinafter, the "Philadelphia meeting"), defendant STEFAN R. SEUSS represented himself to the UCA to be an asset and wealth management specialist with Seuss and Partners, L.L.C., a consulting firm consisting of an international network of independent partners and affiliates. Defendant Seuss further represented that defendant SEUSS provided services to his clients that involved, among other things, setting up off shore companies in the British Virgin Islands and elsewhere, foreign bank accounts, and international trusts as solutions designed to conceal the client's assets from United States authorities.

8.  On or about July 10, 2007, at the Philadelphia meeting, defendant THOMAS R. MEYER, represented himself to the UCA to be a consultant to various insurance companies, who specialized in trusts and investment opportunities involving life insurance settlements, and who worked with defendant STEFAN R. SEUSS, from time to time, to provide client services that included investing the client's funds that were transferred through the off shore structures and into foreign bank accounts set up by defendant SEUSS.

9.  On or about July 10, 2007, at the Philadelphia meeting, defendants STEFAN R. SEUSS and THOMAS R. MEYER told the UCA that cash generated from the UCA's business of illegally duplicating and selling copyrighted CDs, DVDs and software products could be transferred out of the United States to an off-shore company in the British Virgin Islands, placed in insurance investments set up by defendant MEYER, and transferred into

4

a foreign bank account created by defendant SEUSS.  Defendants SEUSS and MEYER further represented that this was the solution to the UCA's problem of moving huge sums of cash out of the United States undetected.

        10.    On or about July 10, 2007, at the Philadelphia meeting, defendants STEFAN R. SEUSS and THOMAS R. MEYER assured the UCA that United States authorities would not be able to locate the UCA's money if defendants SEUSS and MEYER provided these services.  Defendant STEFAN R. SEUSS proposed that the UCA start with the sum of $500,000 as a "test" transaction, to which defendant THOMAS R. MEYER represented to the UCA, we are "very creative" on this.

        11.    On or about July 10, 2007, at the Philadelphia meeting, defendant THOMAS R. MEYER represented to the UCA that in order to transfer the UCA's money to an off shore location, defendant MEYER must first receive the cash in the United States, and that another individual, who worked with defendants MEYER and STEFAN R. SEUSS, but is unknown to the grand jury, would come to New York to pick up the cash from the UCA for defendant MEYER.  The UCA expressed concern that the UCA would be unable to explain where all the UCA's cash came from because it was not really legal. Defendant SEUSS stated that "the cash thing is very secretive obviously."  Defendant SEUSS aknowledged  that setting up the "vehicle is easy" but getting the cash to the "vehicle" is the "critical part."

        12.    On or about July 10, 2007, at the Philadelphia meeting, defendant STEFAN R. SEUSS assured the UCA that any cash relinquished by the UCA to defendants SEUSS and THOMAS R. MEYER for these ventures would be secure, because defendant SEUSS had "friends" from Eastern Europe that functioned as enforcers for defendant SEUSS to insure

that the UCA would not be cheated.

13. On or about February 12, 2008, at a meeting held with the UCA in the offices of Global in Ponte Vedra Beach, Florida, defendant THOMAS R. MEYER discussed the initial sum of $500,000 that the UCA would need for these "ventures" and advised that "we can easily do this with $5 million." Defendant MEYER assured the UCA that defendant MEYER was concerned with "transparency" and did not want to "raise flags." Defendant MEYER recommended to the UCA that for a cost of approximately $15,000 defendant STEFAN R. SEUSS will set up the off shore company, an off shore account and a bank account.

14. On or about February 12, 2008, in the offices of Global, defendant THOMAS R. MEYER advised that if the UCA needed to move smaller sums of cash overseas, in increments of $50,000 for short term liquidity, defendant MEYER would set up a "consulting agreement" with the UCA as a computer software expert, whereby the UCA would submit invoices for services performed and receive cash back as payments for those invoiced services.

## OVERT ACTS

In furtherance of the conspiracy, defendants STEFAN R. SEUSS and THOMAS R. MEYER committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about July 10, 2007, in the Renaissance Hotel in Philadelphia, Pennsylvania, defendants STEFAN R. SEUSS and THOMAS R. MEYER met the UCA and provided the UCA with solutions to transfer and conceal approximately $500,000 in cash proceeds from the UCA's business of illegally duplicating, distributing and selling copyright protected products from the United States to hidden off shore companies, bank accounts and

investments outside the United States that were structured by defendants SEUSS and MEYER.

   2. On or about February 12, 2008, at a meeting in the offices of Global in Ponte Vedra Beach, Florida, defendant THOMAS R. MEYER spoke with the UCA about investing the initial sum of $500,000 in cash in the above ventures, which cash the UCA represented needed to be moved out of the United States to an overseas account.  Defendant MEYER further recommended that the UCA pay defendant SEUSS to "get" the UCA an off shore company and a bank account.

   3. On or about May 12, 2008, defendant THOMAS R. MEYER called the UCA by telephone and offered to meet the UCA in Nebraska, Tennessee or Jacksonville, Florida so the UCA and defendant MEYER could do business together.

   4. On or about June 27, 2008, defendant THOMAS R. MEYER called the UCA by telephone and offered to meet the UCA in New York in July 2008.  Defendant MEYER asked the UCA if the UCA had a bank account in the Czech Republic and represented that defendant MEYER could prepare a consulting agreement that would show the UCA did "stuff for us here ... in the Eastern European area."

   All in violation of Title 18 United States Code, Section 1956 (h).

            A TRUE BILL:

            _____
            GRAND JURY FOREPERSON

_____
MICHAEL L. LEVY
UNITED STATES ATTORNEY